Filed 3/22/16  Maddalena v. Live Nation Worldwide, Inc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES MADDALENA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LIVE NATION WORLDWIDE, INC. et al.,<br><br>    Defendants and Respondents. | D069288<br><br><br>(Super. Ct. No. CIVDS1208466) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Donna G. Garza, Judge.  Affirmed.

Law Offices of London and Nguyen, Khuong D. Nguyen and Robert A. Brock; Law Offices of London, Nguyen and Le, Khuong D. Nguyen and Robert A. Brock, for Plaintiff and Appellant.

Daniels, Fine, Israel, Schonbuch & Lebovits, Michael N. Schonbuch, Scott A. Brooks and Anthony C. Kohrs, for Defendants and Respondents.

James Maddalena was assaulted outside a music venue (the San Manuel Amphitheater) where an "Ozzfest" music festival was scheduled to take place.

Maddalena sued the performer (John Osbourne, who is also known as Ozzy Osbourne), the promoter (Ozzfest Productions, LLC) (collectively Ozzy defendants), and the entity that allegedly owned or controlled the area where the assault occurred (Live Nation Worldwide, Inc. (Live Nation)).[1] Defendants successfully moved for summary judgment.

Maddalena appeals. We affirm. The court properly granted summary judgment because the undisputed evidence established Maddalena could not prove defendants' alleged wrongful conduct caused Maddalena's injuries. Based on this conclusion, we do not reach the issue whether defendants owed Maddalena a duty to take additional security measures to prevent criminal activity.

FACTUAL AND PROCEDURAL BACKGROUND

*Complaint*

In August 2012, Maddalena filed a complaint against defendants seeking to recover for injuries inflicted by Alexander Portillo. The complaint was bare bones. Regarding the assault, the complaint alleged: On August 14, 2010, Maddalena "was lawfully on the premises of SAN MANUEL AMPHITHEATER, when [Portillo] caused [him] to have serious bodily injury by assaulting and battering him by using excessive

---

[1] We refer collectively to the Ozzy defendants and Live Nation as defendants. Maddalena also sued "Pavilion Partners Limited" and "San Manuel Amphitheater." As Maddalena does not mention these parties in his briefs, we dismiss the appeal as to them. Maddalena also brought claims against the perpetrator of the assault and a security company. These defendants are not part of this appeal, and we discuss facts relating to these parties only to the extent they are relevant to the issues before us.

force." Maddalena claimed his injuries caused permanent disability, emotional suffering, and loss of earnings and other economic damages.

Maddalena asserted two causes of action against defendants. The first was labeled "Negligent Hiring, Supervision, Retention, and Responde[at] Superior." In this portion of the complaint, Maddalena alleged: "[D]efendants, and each of them, knew, or in the exercise of reasonable diligence should have known, that the security guards were incompetent and/or unfit to perform the duties for which they were employed, and that an undue risk to persons such as plaintiff would exist because of their employment. [¶] . . . Despite this knowledge, said defendants, and each of them, negligently hired, supervised and/or retained security guards as employees, thus proximately causing the aforesaid injury to plaintiff."

The second cause of action was labeled "Negligent Infliction of Emotional Distress." Plaintiffs incorporated the negligent supervision allegations (described in the paragraph above), and alleged: "Defendants, and each of them, knew or should have known that in so acting, plaintiff would suffer anxiety, worry, and mental, physical and emotional distress."

*Summary Judgment Motion*

Defendants moved for summary judgment, arguing the undisputed facts showed Maddalena "cannot establish the requisite elements of duty, breach and causation." In support they produced Maddalena's deposition testimony and a declaration from the general manager of the San Manuel Amphitheater (Matthew Prieshoff).

3

In the proffered deposition transcripts, Maddalena testified that on August 14, 2010, he drove to the San Manuel Amphitheater before noon to meet a friend who knew an individual with an extra ticket to the Ozzfest music concert to be held later that day. When he arrived, Maddalena met his friend in a crowded picnic area (known as the Meadowlark Shelter) north of the San Manuel Amphitheater near the VIP parking lot. Maddalena's friend pointed to three men (including Portillo) who had an extra ticket. Maddalena approached the men and asked about the ticket. One of the men said he would sell Maddalena the ticket for $20 and he would get the ticket from the car.

Maddalena then turned toward his friend and he woke up the next morning in the hospital with head injuries and no memory of what had happened. According to Maddalena, the attack was completely unprovoked. Maddalena did not know and had never seen Portillo or the other persons with Portillo. No words were exchanged before the attack, other than about the ticket sale. Maddalena had no warning or any sign to suggest that Portillo was going to attack him. He testified that the attack came "[t]otally out of the blue" and he had "no idea" why it occurred. Portillo was later convicted of the assault crime.

In his declaration, general manager Prieshoff stated the San Manuel Amphitheater is operated by Live Nation, and the place where the attack allegedly occurred (the Meadowlark Shelter picnic area) is located within the Glen Helen Regional Park, which is managed by the County of San Bernardino (County). Prieshoff said that "During the 'Ozzfest' concert . . . on August 14, 2010, this [picnic] area was patrolled by the San Bernardino Sheriff's Department." Prieshoff also said: "Neither [Ozzy] Osbourne . . .

4

nor Ozzfest Productions, LLC . . . had any involvement or role with regard to providing security for the venue."[2]

Based on this evidence, defendants argued the undisputed facts showed Maddalena "cannot establish the requisite elements of duty, breach and causation." On the duty issue, defendants argued that a business owes a duty to take affirmative action to prevent third party criminal conduct only where the conduct was foreseeable, and Maddalena has admitted the attack came "out of the blue" and therefore he "possesses no credible evidence to demonstrate that the assault by Portillo was in any way foreseeable to Live Nation and the Ozzy Defendants." On the causation issue, defendants argued that no additional security could have protected against the unprovoked, surprise assault and Maddalena has no evidence to support a link between the alleged negligence and his damages. Defendants argued that based on the unprovoked and random nature of the attack, the only reasonable inference was that the retention of additional or more qualified security guards would not and could not have prevented the attack.

The Ozzy defendants also maintained that Maddalena's claims were without merit because the undisputed evidence showed they had no control over the location where the assault took place, and instead their sole involvement was as a music performer and concert promoter.

---

[2]    Defendants also produced a copy of the sheriff's report. However, the court sustained Maddalena's evidentiary objections to the report and defendants do not challenge this ruling on appeal. We therefore do not consider the facts contained in the sheriff's report.

*Summary Judgment Opposition*

In response to the summary judgment motion, Maddalena obtained a continuance to pursue additional discovery, including to take the deposition of Live Nation's person most qualified (Prieshoff).

After Maddalena completed this additional discovery, he filed his summary judgment opposition. Maddalena did not address the causation issue in his opposition papers, and acknowledged the attack was unprovoked and occurred without any warning. He argued, however, that the court should deny the summary judgment motion because defendants did not meet their burden to show they owed no duty of care.

Maddalena alternatively argued that there were triable factual issues on the duty issue. On this argument, Maddalena requested the court to take judicial notice of a superior court complaint filed by two individuals, alleging that they were attacked while at an Ozzfest concert in 2007. Maddalena also asserted (without presenting supporting evidence) that "Google and Youtube are replete with video examples of vicious violent activities at prior Ozzfests."

Maddalena additionally presented general manager Prieshoff's deposition testimony to show the extent of Live Nation's control over the location where the assault occurred. According to this testimony, the San Manuel Amphitheater is located within the Glen Helen Regional Park (Regional Park). Prieshoff said the Regional Park is owned by the County and leased to Live Nation, and the leased premises includes the San Manuel Amphitheater, the surrounding parking lots, *and* the Meadowlark Shelter picnic area where the attack occurred. At the time of the incident, Live Nation had retained a

6

security company (Contemporary Services Corporation (CSC)) to provide security for the San Manuel Amphitheater. Under the security arrangements, CSC had security responsibilities over the San Manuel Amphitheater, the lines outside the venue, and a secondary stage located south of the venue. But Live Nation did not require CSC to patrol the Meadowlark Shelter picnic area. Prieshoff said this area is instead patrolled and monitored by the sheriff's department.

Maddalena also relied on his own deposition testimony stating: "Ozzfest is a violent place. I mean, you should know from other times, there's been an officer killed there by participants. There's been fights there. There was another guy—these are different years. Another guy got his jaw broke. I mean, it's a concert. . . . "

Based on this evidence, Maddalena argued that defendants owed him a duty to protect against violent attacks, stating: "[T]he prior incident of criminal violence at OZZFEST 2007, and the generally violent nature of the event itself as driven by some of the bands included in the lineup should have prompted Defendants to have hired more security and expanded the scope of CSC's coverage to include the parking area and the Meadowlark Shelter. [¶] . . . [¶] It was not prudent for Defendant to do nothing. A reasonable proprietor would have done something to protect against the threat of criminal violence in the areas surrounding the Amphitheater."

Maddalena also asserted evidentiary objections to four items of evidence: the sheriff's report and three statements in Prieshoff's declaration. As discussed in more detail below, the court sustained the objection to the sheriff's report and one of Prieshoff's statements, but overruled the objections as to the remaining two challenged statements.

7

*Court's Summary Judgment Ruling*

After conducting a hearing, the court granted the summary judgment motion. In its order, the court stated the undisputed facts showed that defendants' alleged "failure to hire, retain, and/or supervise competent security guards is not the cause of plaintiff's injuries." (Capitalization omitted.) In support, the court cited Maddalena's admissions that he had "no idea" why Portillo attacked him; he had no warning to suggest Portillo was going to attack him; the attack was " '[t]otally out of the blue' "; and at no time during Maddalena's brief discussion with Portillo did either person "raise" his voice. The court additionally granted summary judgment as to the Ozzy defendants because the undisputed evidence showed these defendants had no involvement or control with regard to providing security at the concert venue.

## DISCUSSION

### I. *Review Standards*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid.*) This burden can be met by relying on the opposing party's factually inadequate discovery responses if these responses show the plaintiff "will be unable to prove its case by any means." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1439; see *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 78-81.) A

8

defendant seeking to prevail on this ground must make an affirmative showing that the plaintiff does not possess, and cannot reasonably obtain, evidence to prove his or her case. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)

Once the defendant satisfies its summary judgment burden, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar, supra*, 25 Cal.4th at p. 849.) The plaintiff must present admissible evidence to show a triable issue of fact, and may not rely upon the allegations in the pleadings. "An issue of fact . . . is not created by 'speculation, conjecture, imagination or guess work.' " (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)

We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) We assume the role of the trial court and redetermine the merits of the motion. In doing so, we strictly scrutinize the moving party's papers and resolve all doubts in favor of the opposing party. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.) Because summary judgment is a drastic procedure which denies the adversary party a trial, "[the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.)

## II. *Analysis*

Maddalena's two causes of action against defendants are based on negligence theories. To prove negligence, a plaintiff must establish duty, breach, causation, and damages. (*Saelzler, supra*, 25 Cal.4th at p. 767.) The trial court found defendants met

9

their summary judgment burden to show Maddalena would be unable to establish the causation element, and Maddalena failed to satisfy his burden to show a triable issue of fact on this element.

On appeal, Maddalena does not challenge this conclusion on substantive grounds. Instead, he argues the court erred in ruling on causation because (1) defendants did not identify the causation issue in their notice of motion; (2) defendants did not have a table of contents in their moving papers; and (3) defendants did not specifically identify the causation issue in their separate statement of undisputed facts. Based on these alleged procedural deficiencies, Maddalena argues that he had "no specific notice that causation was a target of [defendants'] motion" and "[t]he notice did not advise that the motion was focused on causation."

The argument is without merit. In their notice of motion, defendants stated they were moving for summary judgment "because there is no triable issue as to any material fact" and defendants "are entitled to judgment as a matter of law." This notice was physically attached to defendants' memorandum of points and authorities. Defendants' memorandum began with a three-page introduction in which defendants expressly identified causation as one of the grounds for the motion. Defendants stated they "are entitled to summary judgment as a matter of law in that plaintiff cannot establish the requisite elements of duty, breach *and causation*." (Italics added.) Defendants then summarized the basis for their assertion that Maddalena would be unable to prove the causation element: "[Maddalena] cannot prove that 'inadequate security' was the legal cause of the surprise incident between plaintiff and Portillo and plaintiff's subsequent

10

alleged injuries. Plaintiff cannot, as a matter of law, prove that other security arrangements would have prevented the sudden and unexpected vicious attack by Portillo."

In the substantive portions of the memorandum, defendants devoted eight additional pages (more than one-third of their memorandum of points and authorities) to their argument that Maddalena would be unable to establish the *causation element* based on Maddalena's admissions regarding the random and unprovoked nature of the attack. In these pages, defendants summarized the legal principles pertaining to legal causation and applied those principles to the specific facts of this case.

In their statement of undisputed facts, defendants likewise specifically identified the facts supporting their claim that the alleged negligence did not cause Maddalena's injuries, i.e., the retention of additional or more qualified security guards would not have prevented the attack because Maddalena admitted the attack was unprovoked, random, and " '[t]otally out of the blue.' " They also directed the court to the specific pages in the record supporting those factual claims.

On this record, Maddalena had sufficient notice that defendants were moving for summary judgment on the ground that he did not possess evidence to establish the causation element of his negligence causes of action. The memorandum of points and authorities contained a discussion of the causation element as a ground for the motion, and the statement of undisputed facts identified the evidence supporting defendants' causation arguments. We find unavailing Maddalena's reliance on the fact that the notice

11

of motion contained only a more general description of defendants' contention and that defendants did not include a table of contents in their memorandum.

We also reject Maddalena's argument that he was not required to respond to defendants' lack-of-causation contentions because defendants did not specifically use the word "causation" in their statement of undisputed facts. Maddalena relies on California Rules of Court, rule 3.1350(b), which concerns summary adjudication motions and requires parties moving for summary adjudication to identify the specific cause of action at issue (or the duty issue which can also be the subject of a summary adjudication motion) in their statement of undisputed facts. This rule does not help Maddalena on this appeal. Although defendants moved for summary adjudication as an alternative to summary judgment, the court granted the summary judgment motion. Thus, the issue whether defendants complied with procedural requirements relating to a summary adjudication motion is not a basis for challenging the judgment.

A "separate statement serves two important functions in a summary judgment proceeding: It notifies the parties which material facts are at issue, and it provides a convenient and expeditious vehicle permitting the trial court to hone in on the truly disputed facts." (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74.) These purposes were served in this case. Defendants' separate statement identified the material facts at issue and provided the trial court with a "convenient and expeditious vehicle" for the court to determine whether any of these facts were disputed. (*Ibid.*)

Maddalena made no substantive argument below or in his briefs to this court challenging the determinations that defendants met their burden to show Maddalena

would be unable to prove the causation element of his negligence claims, and that Maddalena did not present any evidence refuting this conclusion. By failing to assert and develop the argument or to cite any applicable legal authority, the argument is waived. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 [" 'issue merely raised by a party without any argument or authority is deemed to be without foundation and requires no discussion' "].)

Further, on our independent review of the record and the applicable law, we are satisfied the court correctly granted the motion on the causation issue. To recover against a property owner or occupier for failing to prevent the criminal actions of a third party, the plaintiff must prove duty, breach of duty, *and* causation. (*Saelzler, supra*, 25 Cal.4th at pp. 772, 777-779.) To prove causation, "the plaintiff must show that the defendant's act or omission was a 'substantial factor' in bringing about the injury." (*Id.* at p. 778.)

In moving for summary judgment on the causation issue in a third-party criminal-acts case, the defendant may satisfy its initial burden by showing the plaintiff has not established, and cannot reasonably expect to establish, that the defendant's alleged negligence was a " 'substantial factor' " in bringing about the injury. (*Saelzler, supra*, 25 Cal.4th at pp. 768, 778.) At that point, the burden shifts and the plaintiff must present *specific facts* showing the defendant's act or omission substantially contributed to the plaintiff's injury. (*Id.* at pp. 772-781.) The plaintiff must show "by nonspeculative evidence, some actual causal link between the plaintiff's injury and the defendant's failure to provide adequate security measures." (*Id.* at p. 774.) Under this rule, the fact that an

13

assault occurred in a location that did not have security personnel or the fact that additional security "*might* have prevented the assault" is insufficient to establish the requisite causal relationship. (*Id.* at pp. 781, 774, italics added.)

Under these principles, defendants met their burden to show a lack of causation based on Maddalena's admissions that the one-on-one assault occurred in a public outdoor space with many witnesses present and without any warning or reason. Given this admitted factual scenario, there is no reasonable basis to find that even if Live Nation had required its security personnel to cover the Meadowlark Shelter area, this security measure would have precluded or prevented the attack. It would be speculative to conclude that a security officer would have been standing next to Maddalena and could have reacted with sufficient speed to prevent the attack, and/or that the presence of security would have deterred this attack visible to numerous persons. (See *Roe v. McDonald's Corp., supra*, 129 Cal.App.4th at pp. 1119-1120 [defendant's failure to undertake security measures could not be considered cause of plaintiff's assault by third party on defendant's premises when there was no evidence defendant had reason or opportunity to do so during short time assailant was on premises]; *Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1372 [when "an injury occurs with such rapidity that supervisorial personnel could have no opportunity to discover and respond to the situation, then claims of abstract negligence will not support recovery"].) There was no evidence showing the required causal link between the lack of security personnel and the sudden, unprovoked assault against Maddalena.

In his reply brief, Maddalena argues the attack lasted "for almost 30 seconds," and if guards had been "**deployed** in the Meadowlark Shelter, [they] could have intervened sooner . . . and prevented some if not most of the injuries . . . suffered." However, in support he relies on the sheriff's report, to which he successfully asserted an evidentiary objection. Because the court (at Maddalena's request) did not consider this document, we are also precluded from doing so. In any event, even assuming the report supports that the assault occurred during a 30-second period, this fact is not enough to show security personnel would have prevented the attack. If Live Nation had required its San Manuel Amphitheater security officers to patrol the Meadowlark Shelter area, there is no showing the security personnel would have been present during the time of the "30-second" attack and could have acted to prevent this sudden assault.

Because summary judgment was proper on the ground that the undisputed facts showed Maddalena would be unable to prove defendants' alleged negligence caused Maddalena's injuries, we do not reach defendants' alternate argument that the undisputed facts showed they owed no duty to Maddalena as a matter of law. Even assuming a property owner owes a duty to a customer to have taken measures to prevent criminal activity, the plaintiff cannot recover unless he or she establishes the defendant's breach of duty *caused* the injuries. (See *Saelzler, supra*, 25 Cal.4th at p. 778.) Here, the undisputed evidence established a lack of causation.

Maddalena raises two additional issues in his appellate briefs.

First, Maddalena argues at length that there was a triable factual issue regarding whether Live Nation had control over the Meadowlark Shelter area as the County's tenant

15

of the Regional Park. The existence of a triable issue of fact on this matter does not preclude summary judgment. Even assuming Live Nation had control over the Meadowlark Shelter area, it cannot be held responsible for the third party assault on Maddalena because, as discussed above, there is insufficient evidence to show Live Nation's alleged negligence was a substantial factor in causing the assault or Maddalena's injuries.

Second, Maddalena contends the court erred in overruling his objection to two statements in Prieshoff's declaration: (1) Prieshoff is "informed and believe[s], and upon such information and belief so states that the plaintiff alleges that the subject incident purportedly occurred at the picnic areas north of the venue near the VIP parking area"; and (2) "Neither [Ozzy] Osbourne . . . nor Ozzfest Productions, LLC . . . had any involvement or role with regard to providing security for the venue."

The court did not err in overruling Maddalena's evidentiary objections. In the first challenged statement, Prieshoff merely repeats the *alleged* location of the assault. Maddalena admits the assault occurred at the Meadowlark Shelter area, and Prieshoff's repeating this allegation was not improper. On Prieshoff's second challenged statement, the court had a reasonable basis to find that Prieshoff—as general manager for the San Manuel Amphitheater—had sufficient personal knowledge to state that the Ozzy defendants (the performer and his promoter) were not responsible for providing security in the relevant areas. In any event, the admission of these statements had no possible impact on the propriety of the summary judgment.

16

DISPOSITION

Judgment affirmed.  Appellant to bear respondents' costs on appeal.


                                                              HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.